IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RONALD STRICKLAND,
    Petitioner,

vs.                                  Case No.:  3:13cv404/MCR/EMT

MICHAEL D. CREWS,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 4).  Respondent filed an answer and relevant portions of the state court record (doc. 13).  Petitioner filed a reply (doc. 16).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 13).[1]  Petitioner was charged in the Circuit Court in and for Walton County, Florida, Case No. 2003-CF-000596, with one count of trafficking in amphetamine or

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 13).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Case 3:13-cv-00404-MCR-EMT   Document 18   Filed 04/03/14   Page 2 of 14

Page 2 of 14

methamphetamine (28 grams or more but less than 200 grams) (Count 1), one count of unlawful possession of a listed chemical (ephedrine and/or pseudoephedrine and/or acetone) (Count 2), and one count of possession of drug paraphernalia (Count 3) (Ex. C at 5). Following a jury trial, he was found guilty as charged (Ex. C at 236–37, Ex. F). On April 22, 2004, Petitioner was sentenced to twenty (20) years of imprisonment, with a seven-year mandatory minimum, followed by seven (7) years of probation on Count 1, a concurrent term of fifteen (15) years of imprisonment on Count 2, and a concurrent term of 29 days of imprisonment on Count 3, with pre-sentence jail credit of 150 days (Ex. C at 272–75, Ex. G).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D04-2459 (Exs. B, H). The First DCA affirmed the judgment per curiam without written opinion on April 6, 2005, with the mandate issuing April 22, 2005 (Exs. B, K). Strickland v. State, 898 So. 2d 943 (Fla. 1st DCA 2005) (Table). Petitioner did not seek further review.

On May 10, 2006, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M). The state circuit court held an evidentiary hearing, at which Petitioner was represented by counsel (Ex. N). The court denied Petitioner's Rule 3.850 motion in an order rendered May 2, 2011 (Ex. M at 136–41). Petitioner appealed the decision to the First DCA, Case No. 1D11-2827 (Ex. O). The First DCA affirmed the judgment per curiam without written opinion on June 21, 2013, with the mandate issuing July 17, 2013 (Exs. R, S). Strickland v. State, 115 So. 3d 1007 (Fla. 1st DCA 2013) (Table).

While Petitioner's Rule 3.850 motion was pending, he filed a petition for writ of habeas corpus in the First DCA, Case No. 1D07-1994, alleging ineffective assistance of appellate counsel (Exs. T, U). The First DCA denied the petition on December 5, 2007 (Ex. X). Strickland v. State, 969 So. 2d 577 (Fla. 1st DCA 2007) (Mem).

Petitioner filed the instant federal habeas action on July 3, 2013 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the

instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.: 3:13cv404/MCR/EMT

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable

application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

      Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.  PETITIONER'S CLAIMS

   A.   Ground One: "Trial Counsel was ineffective for misadvising Petitioner concerning his right to testify during trial."

Petitioner asserts his defense counsel advised him it would not be wise to testify at trial, because there was no telling what the prosecutor would ask him, and it would "open the door for God knows what" (doc. 4 at 5). He alleges counsel advised him that the prosecutor would use the

opportunity to "bring in anything bad" about him, including prior instances of drug trafficking (*id.*). He alleges counsel also told him that disgruntled employees would be permitted to testify about Petitioner's general character and "anything that may have happened in the past" (*id.*). Petitioner states he chose not to testify based upon counsel's advice (*id.*). He alleges if he had known that the scope of the prosecution's cross-examination of him and presentation of rebuttal evidence was limited, he would have elected to testify (*id.*). He alleges he would have testified to the following: (1) he was not guilty of trafficking in methamphetamine; (2) he "made" methamphetamine for his personal use and his fiancee's use; (3) he did not "manufacture" methamphetamine; (4) his fiancée "cooked" the methamphetamine; and (5) the amount of methamphetamine underlying the trafficking charge was the product of methamphetamine that his fiancée made (*id.*).

Respondent contends the state court's adjudication of this claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 13 at 6–18).

     1.  Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d

384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Specifically with regard to a defendant's fundamental right to testify, defense counsel is responsible for "advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. However, a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06. Additionally, the prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

      2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his Rule 3.850 motion (Ex. M at 7, 13–20).  In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (*id.* at 137–38).  The court adjudicated the claim as follows:

> The Defendant claims that this [sic] counsel was ineffective for misadvising the Defendant regarding the scope of cross-examination should the Defendant testify. The Defendant alleges that this misadvice "cause[d] the Defendant to waive his right to testify when he, otherwise, would have testified."
>
> This claim should be denied because the Court finds that the Defendant was not prejudiced within the meaning of Strickland by not testifying.  There is no reasonable probability the result of the trial would have been different had the Defendant testified as alleged in the instant motion.  See Monlyn v. State, 894 So. 2d 832, 837 (Fla. 2004) (Requiring defendant claiming ineffective assistance from failure to advise him of right to testify to satisfy both prongs of Strickland).
>
> In his sworn motion, the Defendant alleges that had he testified, he would have testified as to the actual weight of the "meth" rather than "the gross weight of the unusable mixture."  Thus, the Defendant claims that "the jury would have come to the . . . reasonable and logical conclusion . . . that the instant defendant should only be punished for the weight of the controlled substance and not the gross weight of the unusable mixture in evidence."
>
> Pursuant to section 893.02(15), Florida Statutes, the Legislature has defined a "mixture" as "*any* physical combination of two or more substances." (Emphasis added).  Furthermore, section 893.135(6), Florida Statutes, provides that, "For the purpose of clarifying legislative intent regarding the weighing of a mixture containing a controlled substance described in this section, *the weight of the controlled substance is the total weight of the mixture, including the controlled substance and any other substance in the mixture*."  (Emphasis added).  Again, by the use of the language "any other substance," the intent of the Legislature could not be clearer. See State v. Yu, 400 So. 2d 762 (Fla. 1981) (penalizing possession of any mixture containing an illicit substance, *without regard* to the percentage of the illicit substance in the mixture, is not arbitrary and unreasonable).  Thus, there is no reasonable probability the result of the proceeding would have been different had the Defendant testified as to the "purity" of the substance seized by law enforcement as the Defendant describes in his motion.

(*id.* at 138–39).  Petitioner argued this claim in his initial brief on appeal to the First DCA (Ex. O). The appellate court affirmed the lower court's decision without written opinion (Ex. R).

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); *see also* Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Therefore, this court must accept the state court's determination that Florida law defines a "mixture" as "any physical combination of two or more substances," and with regard to weighing a mixture containing a controlled substance, the weight of the controlled substance is "the total weight of the mixture, including the controlled substance and any other substance in the mixture."

At Petitioner's trial, Sergeant Caleb Davidson testified that he collected evidence seized by other officers during execution of a search warrant on Petitioner's property (Ex. F at 144–235). He testified that one of the items seized from a shed was a 16-ounce rubbing alcohol container with a "bilayer" liquid in it (*id.* at 159, 188).[3] Teresa Pribbenow, a senior crime lab analyst in the drug chemistry section of the Florida Department of Law Enforcement, testified that she weighed each of the layers of the bilayer liquid and conducted testing on each layer to determine if it was a controlled substance (*id.* at 240, 260–62). She testified that the bottom layer of the liquid weighed 76.2 grams, and testing determined that it was methamphetamine (*id.* at 264).

In Petitioner's Rule 3.850 motion, submitted under penalty of perjury, he stated that his sole defense to the charge of trafficking in methamphetamine was that the amount of methamphetamine he possessed was not sufficient to support the quantity element of the charge (28 grams) (Ex. M at 16). Petitioner did not dispute that he possessed methamphetamine (*id.* at 16–17). He stated he would have testified he was not a drug dealer, just a drug user; and he was making only 5–6 grams of methamphetamine, which was enough for his personal use (*id.* at 16). He would have testified he began using methamphetamine to enable him to work more hours in an effort to save his floundering businesses, and he soon discovered that it would be more cost effective for him to produce his own rather than purchase it elsewhere (*id.* at 17). He would have testified he learned that he could never produce any greater amount of methamphetamine than the amount of ephedrine he used in production,

---

[3] The photograph of the container was admitted into evidence as State's Exhibit 14 (Ex. F at 159). The bottom layer of the bilayer liquid in the container was admitted as State's Exhibit 118 (*id.* at 188).

Case No.: 3:13cv404/MCR/EMT

regardless of how much or how many other chemicals or compounds he added to the mixture (*id.*). For example, if he used pills containing 6 grams of ephedrine in the methamphetamine-making process, he could produce no more than 6 grams of methamphetamine (*id.*). He would have testified that since the amount of "finished meth" in his possession was only 6 grams, there is a reasonable probability the jury would have convicted him of the lesser offense of possession of methamphetamine (*id.* at 17–19). Petitioner clarified that he was not alleging defense counsel purposely misled him, only that based on counsel's statements, he "understood, or misunderstood" that if he testified, the scope of the prosecutor's cross-examination would be unlimited (*id.* at 20).

At the post-conviction evidentiary hearing, Petitioner testified that his trial testimony would have been the following:

> I would have let them [the jurors] know that my fiancé [sic] and I had indeed manufactured meth before in small amounts for our own use and we had come to the conclusion one morning that she had a problem with it so we had decided to wean her off of it and to slow down. She always liked to do the cooking and she would only cook small six gram batches.
> . . . .
> Well, my fiancee, she always cooked six gram batches, well technically 5.9 gram batches, because that's the amount that comes in two boxes of the type of pills that she would buy. So the total amount of meth involved would have been a little under six grams, the total amount. But she was charged with 393 grams and I was charged with 76.3 which was some of the old oil that she had left on the shelf in the shop when she left the house.
> . . . .
> I didn't know about that at all.

(Ex. N at 12–13).

Given the strength of the evidence as to the weight of the methamphetamine found in the rubbing alcohol container seized from Petitioner's shed (the FDLE crime lab analyst's testimony that 76.2 grams of methamphetamine was in the bottom layer of the rubbing alcohol container), Petitioner failed to show a reasonable probability that if he had testified, the jury would have acquitted him of the trafficking charge and convicted him of the lesser offense of possessing only 6 grams of methamphetamine. The state court's determination that he failed to satisfy the prejudice prong of the Strickland standard was not unreasonable. Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B. Ground Two: "Postconviction Counsel was ineffective where counsel waived Petitioner's allegation that trial counsel was ineffective in his assistance as defense counsel where Petitioner's attorney conceded his guilt to possession of unlawful chemicals and possession of drug paraphernalia during counsel's closing arguments at trial."

Petitioner contends Attorney James T. Miller, Petitioner's retained counsel during the state post-conviction proceeding, was ineffective for waiving the other ineffective assistance of trial counsel claim presented by Petitioner in his post-conviction motion (doc. 4 at 7–9). Petitioner contends Mr. Miller's alleged deficient performance prejudiced his right to present the underlying ineffective assistance of trial counsel claim in his post-conviction appeal (*id.* at 9). Petitioner cites Martinez v. Ryan, 132 S. Ct. 1309 (2012) in support of his claim (*id.*).

Respondent contends Petitioner's claim is not cognizable and, to the extent it is cognizable, it is unexhausted, procedurally defaulted, and without merit (doc. 13 at 19–26).

The federal habeas statute provides, "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under 2254." 28 U.S.C. § 2254(i); *see also* Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 944, 45 (11th Cir. 2014) (noting that Martinez v. Ryan, ––– U.S. ––––, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) did not create a freestanding claim for challenging a conviction or sentence based on the alleged ineffective assistance of post-conviction counsel). Further, there is no constitutional right to the appointment of counsel on collateral review of a conviction. *See* Coleman v. Thompson, 501 U.S. 722, 752, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991);[4] Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); Murray v. Giarratano, 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989) (applying rule to capital cases); Jones v. Crosby, 137 F.3d 1279, 1280 (11th Cir. 1998); *see also* Barbour v. Haley, 471 F.3d 1222, 1227–29 (11th Cir. 2006). Therefore, Petitioner cannot show he is in custody in violation of the Constitution, based upon his post-conviction counsel's alleged ineffectiveness. *See* 28 U.S.C. § 2254(a); *see also, e.g.*, Thomas v. Crews, No. 3:12cv128/LAC/EMT, 2013 WL 3456978, at * 18 (N.D. Fla. July 9, 2013) (unpublished); Williams v. Crews, No. 5:11cv356/MMP/EMT, 2013 WL 1729004, at *5 (N.D. Fla. Feb. 25, 2013)

---

[4] Subsequent to Coleman, the Supreme Court held that in a federal habeas proceeding, ineffective assistance of counsel in an initial-review collateral proceeding may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. *See* Martinez, 132 S.Ct. at 1315. The Martinez Court declined to hold, however, that there is a constitutional right to counsel in initial collateral review proceedings. *Id.*

(unpublished), *Report and Recommendation Adopted by*, 2013 WL 1729102 (N.D. Fla. Apr.22, 2013) (unpublished). Accordingly, Petitioner is not entitled to federal habeas relief on Ground Two.

## IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the amended petition for writ of habeas corpus (doc. 4) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3rd day of April 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).